IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL JOHNSON,                        *
           Plaintiff
                               *

    v.                             CIVIL ACTION NO. JFM-06-3362
                               *

BALTIMORE COUNTY
JAMES O'NEILL                     *
JOHN BERRY
OFFICER MILLER                 *
OFFICER JERRY THOMAS
CHARLES LEATHERMAN       *
DR. COLEMAN
TRACY JOHNSON                 *
          Defendants

                              *****

## <u>MEMORANDUM</u>

On December 18, 2006, the court received for filing plaintiff's civil rights complaint filed pursuant to 42 U.S.C. §1983.[1]  Counsel for defendants has filed a dispositive motion (Paper No. 9), which shall be treated as a motion for summary judgment.[2]  Plaintiff has not filed a response.[3]  No hearing is needed to resolve the question as to whether plaintiff is entitled to relief in this case.  *See* Local Rule 105.6 (D. Md. 2004).

---

[1]      Plaintiff is confined at the Clifton T. Perkins Hospital Center.

[2]      Service of process was not effected on defendants Coleman or Johnson.

[3]      Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on April 4, 2007,  plaintiff was notified that defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action.  Paper No. 10. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court.  *Id.*  Plaintiff was subsequently granted additional time to and including May 29, 2007, to file any opposition to the pending motion. Paper No. 12.  He has chosen not to file a response.

**Factual Background**

Plaintiff makes a bald assertion that during his detention at the Baltimore County Detention Center ("BCDC") in 2005, he was subject to unconstitutional conditions of confinement while on a "close watch, strip cell" in April and July of 2005.   Paper No. 1.  The thrust of the complaint, however, involves plaintiff's claims that while in BCDC confinement on or about May 1, 2005, he became psychologically ill and was taken to the medical unit, where he was placed on "close watch psychological evaluation" in a cell already occupied by two other prisoners.   *Id.*  Plaintiff asserts that he refused to be "triple-celled" as he would be forced to sleep on the floor and was thereafter thrown to the floor by correctional officers, resulting in a cut over his left eye. Paper No. 1.  He further claims that defendants wrote up false incident reports concerning this altercation.  *Id.*

Plaintiff also complains that when he was returned from the hospital he was placed on "suicide watch as harassment," all of his clothes were taken from him, and he was forced to sleep on a cold concrete floor twenty-four hours a day for more than six days. *Id.*  He states he was also forced to eat cold food during this time and was denied showers and toiletries.  *Id.*

Plaintiff further alleges that he was assaulted by another mental health prisoner on or about April 17, 2006, and that defendants failed to protect him from the attack because there was no staff on the tier and officers were late to arrive to break up the assault.[4] *Id.*  He claims he did not go to a hospital for several days.  *Id.*

The uncontroverted records before the court reveal that on May 1, 2005, BCDC Officer Donald Grandbois was performing routine duties in Section 2C when plaintiff informed him that he saw blood coming out of the walls.   Officer Grandbois called the medical office and plaintiff

---

[4]        In referencing the prisoner assault, plaintiff also mentions the date of May 18, 2006.  Based upon the record presented to this court it appears that the prisoner assault occurred on April 17, 2006.

was subsequently escorted to the medical office for monitoring. After the evaluation it was

determined that plantiff should be on close observation.   He was escorted to one of four cells

equipped with closed-circuit cameras for close observation but refused to lock in after repeated

orders.   Defendants state that each cell had a capacity for three prisoners, there were only two

prisoners housed in the cell at the time, and a bunk bed and a floor mattress was in the cell.

Plaintiff demanded to speak to the supervising sergeant and was told he could do so after

locking into the cell.  A sergeant was called, but plaintiff refused to lock in the cell and

threatened to hurt any staff member if he was placed into the cell.  Sergeant Thomas arrived on

the scene and gave a direct order for plaintiff to lock in the cell which plaintiff refused.

Thomas made an attempt to handcuff plaintiff's left wrist, but plaintiff forcefully removed his

wrist, assumed a defensive stance, and threatened to kill officers.   By this time an emergency

response team ("ERT") arrived.  A member of the ERT grabbed plaintiff's right arm and used a

right arm bar[5] to take plaintiff down to the floor, Sergeant Thomas grabbed plaintiff's left arm

and took him down to the floor with the assistance of another ERT officer, and Officer

Grandbois used a left wrist arm lock as plaintiff was placed on the floor.  Plaintiff was then

handcuffed.  As he was taken to his feet, officers noticed blood coming out of cut near plaintiff's

left eye.  A Medical Code 2 was called by Sergeant Thomas via radio and medical and available

staff responded.  Plaintiff complained of dizziness and was transported by stretcher to the

medical office and then to a hospital for evaluation.  He was returned to BCDC the same day.

Plaintiff was subsequently charged with violating a number of BCDC regulations.

With respect to the April 17, 2006 prisoner assault, it is uncontroverted that prisoner

Aaron Edwards assaulted plaintiff with a broom he had been given to clean his cell.  The assault

---

[5]       According to defendants an arm bar is a defensive technique in which the attacker's arm is
straightened out perpendicular to his or her body and force is applied behind the back of his or her arm to
direct a person in a certain direction.

was witnessed by an officer who immediately radioed a Code 2 (officer in need of assistance). Officers arrived approximately two minutes later and the prisoners were separated. Plaintiff was taken to the medical unit. Edwards was questioned and indicated that "voices were telling him to assault inmate Johnson." Edwards was subsequently found guilty of interfering with correctional staff and assaulting a prisoner and given 15 days of disciplinary segregation.

### Standard of review

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *See Halperin v. Abacus Tech. Corp.*,128 F.3d 191, 196 (4th Cir. 1997) (*citing Anderson,* 477 U.S. at 255). The non-moving party may not rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of...plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252.

The application of force involved in a detainee's confinement is evaluated under the Fourteenth Amendment's Due Process Clause.[6] Under that standard, the use of force violates the Due Process Clause if it is intended as punishment. *See United States v. Cobb*, 905 F.2d 784, 788-789 (4th Cir. 1990); *Bibum v. Prince George's County*, 85 F.Supp.2d 557, 562 (D. Md. 2000). Punitive intent may be inferred when the application of the force was not reasonably

---

[6]     Defendants indicate that while confined at BCDC plaintiff was a pre-trial detainee.

related to a legitimate non-punitive objective.  *Cobb*, 905 F.2d at 789.  Further, under Fourth

Circuit caselaw, this court evaluates the extent of the alleged injuries under co-extensive Eighth

Amendment standards.  *See Grayson v. Peed*, 195 F.3d 692, 696-697 (4th Cir. 1999).  The

application of force which results in injuries found to be *de minimis* does not constitute excessive

force under the Fourteenth Amendment.  *See Riley v. Dorton*, 115 F.3d 1159, 1167-68 (4th Cir.

1997); *see also Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998).

Plaintiff, having made a delusional comment about blood coming out of a wall, was taken

to BCDC's medical facility for evaluation on May 17, 2005.  A determination was made that he

should be placed in a "close watch" cell.   There is no material dispute that on the date in

question plaintiff repeatedly refused direct orders to lock in the cell and made both verbal and

physical threats to officers.   An initial attempt to simply place him in handcuffs proved

unsuccessful.  When an order is given to a prisoner there are only so many choices available to

the correctional officer.  If the order requires some action by correctional officers and the inmate

cannot be persuaded to obey the order, some means must be employed to compel compliance,

including, at times, physical force.  In plaintiff's case only after verbal orders proved ineffective

did officers take action to subdue him by grabbing his arms and using an arm bar to take him to

the ground.  Minimal force was applied and plaintiff suffered a cut over his left eye, a minor

injury supportive of the defendants' version of the incident.   No Fourteenth Amendment

deprivation has been demonstrated and defendants are entitled to judgment as to this excessive

force claim.[7]

Confinement conditions of pretrial detainees are to be evaluated under the Due Process

Clause rather than under the Eighth Amendment.  *See Bell v. Wolfish*,  441 U.S. 520, 535 n. 16

---

[7]       Plaintiff's claim of supervisory liability on the part of defendants Berry and Leatherman are
is subject to dismissal in the absence of proving a constitutional injury.   *See Shaw v. Shroud*, 13 F.3d 791,
799 (4th Cir. 1994).

(1979); *Hill v. Nicodemus,* 979 F.2d 987, 990 (4th Cir.1992).  While a convicted inmate must prove that his confinement is cruel and unusual punishment, detainees need only prove that their confinement amounts to punishment in order to state a claim. *See Nelson v. Collins,* 659 F.2d 420, 425 (4th Cir. 1981).   To establish that a particular condition or restriction of detention constitutes impermissible punishment, a detainee must show either (1) an expressed intent to punish or (2) a lack of a reasonable relationship to a legitimate governmental nonpunitive purpose.  *See Bell v. Wolfish,* 441 U.S. at 538;  *Martin v. Gentile,* 849 F.2d 863, 870 (4th Cir.1988).  The state must justify conditions of confinement on the basis of ensuring the detainee's presence at trial and effectively managing the detention facility. *See Bell v. Wolfish,* 441 U.S. at 540.  Further, the detainee must show he suffered an actual injury from the conditions at issue.  *See Strickler v. Waters*, 989 F.2d 1375, 1382 (4th Cir. 1993)

Plaintiff claims that he was placed on suicide watch to harass him.   The record shows, however, that while at BCDC plaintiff had a history of bizarre and suicidal behavior.   He was placed on close observation and was assigned to suicide watch on May 12, 2005, because he had slashed at his left arm with a piece of plastic.   While on suicide watch plaintiff's sheets, pillow, mattress, blankets, trash, and personal items were removed from the cell per BCDC policy.  Further, his privileges, *e.g.*, visitation and programming, were modified.   Defendants assert that although plaintiff complains about inhumane conditions while on suicide watch, he has failed to allege, much less show, that he suffered more than *de minimis* injuries as a result of his temporary assignment to suicide watch.

I find that plaintiff's assignment to suicide watch was not made for punitive purposes, but was taken to monitor him and to secure his safety and well-being.  Further, he has failed to refute defendants' claims that no injury has been demonstrated from his placement on suicide watch.  Defendants' motion for summary judgment shall be granted as to this claim.

The court also finds that plaintiff failed to prove a Fourteenth Amendment violation, in terms of his general safety and protection at BCDC with regard to the April 17, 2006 assault.[8]

In a failure-to-protect claim a prisoner must show first that the harm he suffered was objectively serious and second that prison officials acted with deliberate indifference.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Plaintiff was assaulted by fellow BCDC prisoner Aaron Edwards with a broken broom handle on April 17, 2006. The assault was witnessed by a BCDC officer who immediately called a Code 2.  Other officers arrived within minutes and separated the prisoners.   It is BCDC policy that at least two officers must be present before intervening in a prisoner-on-prisoner altercation.  There is no evidence that plaintiff had prior problems with Edwards before the incident and communicated same to BCDC staff.   This was unfortunately a spontaneous and unexpected attack.   Officers acted with sufficient dispatch to end the assault.  Edwards was charged and convicted of violating regulations and sanctioned accordingly.   Defendants are entitled to judgment as to this claim.

Finally, a prisoner presenting a denial of medical care claim must prove two essential elements.[9]  First, plaintiff must satisfy the "objective" component by illustrating a serious medical condition.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).   If this first element is satisfied, plaintiff must then prove the second subjective component of the Eighth Amendment standard by showing deliberate

---

[8]   The United States Court of Appeals for the Fourth Circuit has held that the Fourteenth Amendment due process rights of detainees are at least coextensive with the Eighth Amendment rights of convicted prisoners. *See Taylor v. McDuffi*e, 155 F.3d at 483; *Whisenan*t v. *Yuam*, 739 F.2d 160, 163 n.4 (4th Cir. 1984); *Loe v. Armistead*, 582 F.2d 1291, 1292 (4th Cir. 1978). Consequently, Plaintiff's failure-to- protect claim shall be analyzed under the Eighth Amendment.

[9]   Again, because the Fourth Circuit does not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's § 1983 claim, the claim shall be examined under the Eighth Amendment standard of review.

indifference on the part of prison officials or health care personnel.  *See Wilson v. Seiter*, 501

U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the

"deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate

indifference entails something more than mere negligence [but] is satisfied by something less

than acts or omissions for the very purpose of causing harm or with knowledge that harm will

result." *Farmer v. Brennan*, 511 at 835.  Prison personnel "must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and [they] must

also draw the inference." *Id*. at 837.  Personnel are not, however, liable if they "knew the

underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was

insubstantial or nonexistent."  *Id*. at 844; *Johnson v. Quinones*, 145 F.3d at 167.

　　　　Plaintiff complains that after the assault by prisoner Edwards he was not taken to the

hospital for several days despite his pain.  According to the declaration of Officer Gerald Jones,

plaintiff was  immediately taken to the BCDC medical unit for examination and treatment after

the assault.  Plaintiff does not refute this declaration or indicate how each  named defendant is

implicated in the alleged denial of medical care after the assault.  Defendants do not, however,

provide the court medical records showing what injuries were sustained by plaintiff and what

medical care he received.  Consequently, this claim shall be dismissed without prejudice.


### Conclusion

　　　　For the aforementioned reasons' defendants' motion for summary judgment shall be

granted in part and denied in part.  Judgment shall be entered in defendants' favor as to all

claims, with the exception of plaintiff's medical count.[10]  A separate order effecting the ruling

made in this memorandum is being entered herewith.


                                        /s/
                                        _____

Dated: December 18, 2007                J. Frederick Motz
                                        United States District Judge

---

[10]        The complaint against Dr. Coleman and "Psy-Social" Tracy Johnson shall be dismissed
without prejudice.